United States District Court
Southern District of Texas
**ENTERED**
September 13, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IDELFONSO GARCIA-BENITEZ, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-511 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Federal Bureau of Prisons, currently incarcerated in Beaumont, Texas. (D.E. 1, Page 1). Proceeding *pro se*, Petitioner filed this petition pursuant to 28 U.S.C. § 2254 on October 25, 2015.[1] (D.E. 1, Page 6). The subject of the petition is a 2014 Kleberg County conviction for seven counts of felony murder and seven counts of aggravated assault. (D.E. 1, Page 1). Petitioner alleges there were procedural defects in his state habeas case, he received ineffective assistance of counsel in his underlying criminal case, he did not understand his guilty plea, he was denied his rights under the Vienna Convention, his trial counsel had a conflict of interest,[2] the state lacked jurisdiction over the case, and he was denied due process because his trial counsel

---

[1] The petition was signed on October 25, 2015, and received by the Court on November 9, 2015. (D.E. 1, Page 1); *Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998)(A *pro se* prisoner's "habeas corpus petition should be deemed filed when the petition is handed over to prison authorities for mailing.")

[2] Although Respondent does not address this allegation, it was made by Petitioner and considered by this Court. (D.E. 1, Pages 14-15).

withheld his state case file.  (D.E. 1, Pages 7-16).  Petitioner submitted a memorandum of law in addition to his petition on December 29, 2015.  (D.E. 7).

On April 20, 2016, Respondent filed a Motion for Summary Judgment.  (D.E. 13). On June 27, 2016, Petitioner filed a Response to Respondent's Motion for Summary Judgment.  (D.E. 18). As discussed below, it is recommended Respondent's Motion for Summary Judgment be **GRANTED,** Petitioner's request for an evidentiary hearing be **DENIED,** and Petitioner's action for habeas corpus relief be **DISMISSED.**  It is further recommended a Certificate of Appealability be **DENIED.**

## I.      JURISDICTION

Jurisdiction and venue are proper in this Court because Petitioner was convicted in Kleberg County, Texas, which is within the Corpus Christi Division of the Southern District of Texas.[3]  28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000); 28 U.S.C. § 124(b)(6).

## II.     BACKGROUND

On or about March 20, 2013, Petitioner was driving with fourteen passengers in the bed of his pick-up truck when law enforcement attempted to stop him, leading to a high-speed pursuit.  (D.E. 10-2, Pages 57).  When attempting to enter Kleberg Naval Air Station, Petitioner struck a safety barrier, killing seven passengers and seriously injuring

---

[3] Although Petitioner is currently in federal custody serving a federal sentence (D.E. 1, Page 1), he is still able to challenge a subsequent, unexecuted state sentence. *Zuniga v. Lynch*, 619 Fed.Appx. 366, 367 (5th Cir. 2015)(citing *Maleng v. Cook*, 490 U.S. 488, 493 (1989))(holding a petitioner was "in custody" under the definition of § 2254 when serving a federal sentence but challenging a state sentence scheduled to run subsequent to the current sentence).

seven others.  (D.E. 10-2, Pages 57-58).  On July 14, 2014, Petitioner pled guilty in state court and was convicted of seven counts of felony murder and seven counts of felony assault.  (D.E. 10-2, Page 25).  He was sentenced to thirty-five years for the seven felony murder counts and twenty years for the seven felony assault counts, with the sentences to run concurrently. (D.E. 10-2, Pages 25-26). Both sentences were to run consecutively to a 120 month sentence Petitioner received in a related federal case. *See United States v. Garcia-Benitez*, No. 2:13-CR-308-1 (S.D. Tex. Dec. 4, 2013)(final judgment); (D.E. 10-2, Page 26).  On April 26, 2015, Petitioner filed an application for a state writ of habeas corpus challenging his state court conviction. (D.E. 10-2, Pages 31-41).  The 105th District Court of Kleberg County received the state habeas application and made findings of fact and conclusions of law, recommending the Petitioner's application be denied by the Texas Court of Criminal Appeals ("state habeas court").  (D.E. 10-2, Pages 69-71). On September 9, 2015, the state habeas court denied Petitioner's application without a hearing on the findings of the trial court. (D.E. 10-1, Page 1).  On October 25, 2015, Petitioner filed the pending action pursuant to 28 U.S.C. § 2254.  (D.E. 1).

## III.   APPLICABLE LAW

### A.   Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and summary judgment evidence show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with

"significant probative evidence" the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000).

Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force to federal habeas corpus cases. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000)(citations omitted); *see also* Fed. R. Civ. P. 81(a)(4)("These rules apply to proceedings for habeas corpus . . ."). While summary judgment rules apply with equal force in a § 2254 proceeding, the rules only apply to the extent they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke,* 542 U.S. 274 (2004).

### B.    Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") 28 U.S.C. §2254

Federal habeas relief is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States. *Boyd v. Scott*, 45 F.3d 876, 881 (5th Cir. 1994)(per curiam)(citation omitted). Under AEDPA, a state prisoner may not obtain relief with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim:

(a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id*. at 413. The Court noted "unreasonable" is an objective standard and emphasized there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001)(citing *Williams*, 529 U.S. at 412-13).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Under § 2254(d), a habeas court must determine what theories or arguments supported, or could have supported, the state court's decision. *Id*. at 102. Then it must ask whether it is possible that fair minded jurists could disagree

that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Id*. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings....It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.

*Id*. "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Id*. at 103. In addition, if a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).

A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006)(quoting *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005)). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id*. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*,

562 U.S. at 98.  "[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Id*. at 100.

## IV.   DISCUSSION

### A.   State Habeas Procedural Defects

Petitioner alleges (1) the state habeas court failed to hold an evidentiary hearing and (2) it failed to appoint counsel for the Petitioner.  (D.E. 1, Pages 7-8).  These claims relate to the state habeas proceeding and as such are raised for the first time in this action. (D.E. 1, Pages 7-12).

"[I]nfirmities in state habeas proceedings do not constitute grounds for federal habeas relief." *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992).[4] Therefore, such infirmities, as set forth in the current petition, are not reviewable because "the district court's habeas jurisdiction extends only to claims asserting the petitioner 'is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004)(citation omitted).  "[A]n attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself."  *Id*.   (citing *Rudd v. Johnson*, 256 F.3d 317, 320 (5th Cir. 2001)). Therefore, state habeas review is outside the bounds of § 2254.

Even if this Court did review Petitioner's claims on the merits, "[t]he lack of an evidentiary hearing in state court does not [a]ffect the presumption that the state court findings of fact are correct."  *Gallegos v. Quarterman*, 265 Fed. Appx. 300, 303 (5th Cir.

---

[4] The Fifth Circuit has held the decisions of state courts are to receive substantial deference in §2254 cases. *See Brown v. Dretke*, 419 F.3d 365, 371 (5th Cir. 2005)("We must be mindful of the deferential standard of review of 28 U.S.C. § 2254(d).")

2008); *see also Valdez v. Cockrell*, 274 F.3d 941, 950-51 (5th Cir. 2001), *cert. denied*, 537 U.S. 883 (2002)(holding the section applies to all cases adjudicated on their merits in state court as opposed to matters disposed for procedural reasons).  Additionally, "there is no constitutional right to an attorney in state postconviction proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)(citation omitted).  "Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Id.* at 752 (citing *Wainwright v. Torna*, 455 U.S. 586 (1982)).  Neither the Supreme Court nor Texas law provide a federal or state constitutional right to counsel in state habeas cases and absent a constitutional right to counsel, there cannot be a constitutional right to effective assistance of counsel in a habeas proceeding. *Elizalde v. Dretke,* 362 F.3d 323, 329 (5th Cir. 2004)(citing *Ex Parte Graves,* 70 S.W.3d 103, 113-116 (Tex. Crim. App. 2002)).  Therefore, neither the failure to hold a hearing or to appoint an attorney in a state habeas proceeding are grounds for federal habeas relief.  Accordingly, the undersigned respectfully recommends Petitioner's first and second grounds for relief be **DENIED**.

**B.     Ineffective Assistance of Counsel**

Petitioner's ineffective assistance of counsel claims are based on his trial counsel's alleged failure to raise a jurisdictional challenge, failure to translate necessary information into Spanish, failure to give proper advice to plead guilty based on a wrongful prediction of the likely length of his sentence, and conflict of interest.  (D.E. 1, Pages 9-12, 14-15).  The state habeas court found "no evidence to indicate that trial counsel was ineffective." (D.E. 10-2, Page 70).  For the reasons that follow, the undersigned recommends Petitioner has failed to demonstrate the state habeas court

unreasonably denied his ineffective assistance of counsel claims.   Therefore, it is recommended Petitioner is not entitled to relief and Respondent is entitled to summary judgment on this issue.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel using the reliability of the trial as the benchmark for judging any claim. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).   To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland*.   Petitioner must show counsel's performance fell below an objective standard of reasonableness and that deficient performance prejudiced the defense.   *Id*. at 688-89. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.   Petitioner must prove he was prejudiced by his attorney's substandard performance, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.   Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

*Strickland* also applies to cases involving guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).   However, in cases with guilty pleas, there is a different requirement to show prejudice. For the "prejudice" prong, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.   Petitioner must show "significant prejudice" in a noncapital context. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.

1994)(citing *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4 (5th Cir. 1993)).  A defendant who enters a guilty plea waives his right to challenge the effectiveness of his counsel except with regard to the way the ineffectiveness relates to the voluntariness and intelligence of his guilty plea.  *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983)(citing *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir.1981)).

Further, Petitioner "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)(citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  This *McMann* standard applies where a defendant is represented by counsel and pleads guilty and hinges on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases."  *McMann*, 397 U.S. at 771.  Petitioner must "affirmatively prove" such prejudice rather than just allege it.  *Strickland*, 466 U.S. at 693.

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689.  A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690. A petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance while recognizing that "counsel is strongly presumed to have rendered

adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.   The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms." *Id*.

In addition, federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).   Where the state court adjudicated an ineffective assistance claim on the merits, this Court must review petitioner's claim under both *Strickland* and § 2254(d).   When § 2254(d) applies, the question is not whether counsel's actions fell below the *Strickland* standard, it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101.

As discussed below, Petitioner fails to show the state court's determination was contrary to or involved an unreasonable application of *Strickland*, or was an unreasonable determination of the facts based on the evidence in the record.

### 1.      Failure to Raise Jurisdictional Defect

Petitioner claims his appointed counsel, Alfred Montelongo, was ineffective because he failed to raise a jurisdictional challenge to the state prosecution for a crime committed on federal property.  (D.E. 1, Pages 11).  Petitioner asserts the State lacked jurisdiction because (1) Petitioner was released by state police into the custody of federal officers after his initial arrest and (2) Petitioner was arrested within the boundaries of Naval Air Station Kingsville, a federal enclave.  (D.E. 1, Pages 11).  Petitioner claimed state officers pardoned Petitioner by releasing him to federal authorities for prosecution but failed to supply any authority for this proposition.  (D.E. 1, Page 14).  Respondent

argues jurisdiction over Petitioner was retained despite the necessary transfer of custody between Texas and federal officials for the purpose of prosecution.  (D.E. 13, Page 18).  Respondent also asserts state jurisdiction was concurrent with the federal jurisdiction on the naval air station.  (D.E. 10-2, Pages 52-53).  The state habeas court found "[t]he State of Texas had jurisdiction in this case, notwithstanding the federal government's concurrent jurisdiction."  (D.E. 10-2, Page 70).

### a.    Allegation of Relinquishment

Petitioner alleges the State of Texas executed a "relinquishment which amounted to a pardon/commutation" when state officers released him from state custody into federal custody for the purpose of prosecution for federal charges.  (D.E. 1, Page 11; D.E. 7, Pages 11-12).

Determining whether a state authority has relinquished jurisdiction or effectively pardoned an individual rests upon the particular facts of each case.  *Shields v. Beto*, 370 F.2d 1003, 1004-05 (5th Cir. 1967).  The Fifth Circuit has held "action by a state through any of its agencies must be consistent with the fundamental principles of liberty and justice."  *Id*. at 1004.  It is insufficient to prove conduct that merely evidences a lack of eager pursuit or arguable lack of interest.  *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973)(per curiam).  "[T]he waiving state's action must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with fundamental principles of liberty and justice to require a legal sentence to be served in the aftermath of such action or inaction."  *Id*. (internal quotations omitted).  "It is settled where one sovereign surrenders a prisoner to another sovereign for trial, sentencing, and

execution of the sentence before he is to be returned to the custody of the sovereign first having jurisdiction, the prisoner has no standing to attack the agreement between sovereigns and the surrendering sovereign has not thereby waived its right to have the prisoner returned to its custody for trial." *DeLong v. United States*, 474 F.2d 719, 720 (5th Cir. 1973)(per curiam)(citing *Bullock v Miss.,* 404 F. 2d 75 (5th Cir. 1968)).

Petitioner was released by state authorities to federal authorities for the purpose of trial, sentencing, and execution of the sentence.   Accordingly, he has no standing to attack the agreement between the State of Texas and the federal government in transferring him between their sovereign jurisdictions. The failure to raise this issue by his counsel did not affect the knowing and voluntary nature of the plea.   Therefore, it is recommended summary judgment be entered for Respondent on this issue.

### b.      Jurisdiction over Naval Air Station Kingsville

Petitioner alleges the State of Texas did not have jurisdiction to prosecute him for the Texas state penal code offenses of felony murder and aggravated assault because the facts and events supporting those charges occurred on federal property, specifically on the Naval Air Station Kingsville.  (D.E. 1, Page 11).   Respondent asserts Texas never ceded exclusive jurisdiction.  (D.E. 13, Page 14).   The state habeas court found "[t]he State of Texas had jurisdiction in this case, notwithstanding the federal government's concurrent jurisdiction."  (D.E. 10-2, Page 70).

The United States may obtain exclusive jurisdiction over land owned by it within each state.  *See Standard Oil Co. v. People of State of Cal.*, 291 U.S. 242 (1934). However, ownership and use without more does not withdraw the lands from the

jurisdiction of the state.  *Surplus Trading Co. v. Cook*, 281 U.S. 647, 649 (1930).  It is "not required that the Federal Government obtain exclusive jurisdiction in the United States over land or an interest in land it acquires."  40 U.S.C.A. § 3112(a).[5]  "It is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction over land" which can be done by the head of a department, agency, or independent establishment of the Government filing a notice of acceptance with the Governor of the State.  40 U.S.C.A. § 3112(b)-(c).  The states and the federal government may reach mutually satisfactory agreements as to the jurisdiction of a territory within their borders.  *Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518 (1938).  A state may reserve jurisdiction so long as it does not involve interference with federal government function, such as the power to tax local activities.  *See James v. Dravo Contracting Co.*, 302 U.S. 134 (1937)(holding state tax on federal contractors was valid because it did not interfere with the performance of federal functions).

In this case, Petitioner has not effectively rebutted the presumption that the State of Texas had jurisdiction to prosecute him.[6]  Petitioner did not allege any acceptance of jurisdiction by the federal government in his petition.  Additionally, Petitioner did not address the potential reservation of jurisdiction by the state.  Petitioner has not shown there was a valid jurisdictional challenge and therefore, has failed to show his counsel

---

[5] The original act went into effect in 1930.  40 U.S.C.A. § 3112 (original version at ch. 710, 46 Stat. 828 (1930)). Naval Air Station Kingsville was acquired by the US Government in 1941-42. *History,* Naval Air Station Kingsville, http://www.cnic.navy.mil/regions/cnrse/installations/nas_kingsville/about/history.html. The statute therefore applies to this federal installation.

[6] Nor is Petitioner the first person to be prosecuted by the State of Texas for crimes committed on federally-owned military installations. *See Woodruff v State,* 899 S.W.2d 443 (Tex. App. Austin 1995, pet. ref'd)(affirming conviction of a defendant found guilty of driving while intoxicated on Bergstrom Air Force Base); *Tracey v. State*, 350 S.W.2d 563, 563-64 (Tex. App. Austin 1961)(affirming conviction of a defendant found guilty of driving while intoxicated on Dyess Air Force Base)

was ineffective by failing to raise such a challenge.  *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite").  The state court denied relief on this claim and Petitioner has not shown this was an unreasonable application of *Strickland*.  The failure to raise this claim by counsel did not affect the knowing or voluntary nature of Petitioner's plea.  Therefore, it is recommended summary judgment be entered for Respondent on this issue.

 2.   **Spanish Translation**

 Petitioner next alleges his counsel failed to properly translate important documents and information in a way that allowed him to understand them.  (D.E.1, Pages 9-10, 12). Petitioner alleges his counsel failed to adequately communicate all necessary information to him in Spanish and therefore, Petitioner was unable to make an "intelligent, informed decision" regarding his plea agreement.  (D.E. 1, Page 12).  As a result, Petitioner maintains he did not know what the word "consecutive" meant, and therefore, he did not understand he was agreeing to a thirty-five year sentence *consecutive* to any federal sentence.  (D.E. 1, Page 12).  Petitioner argues that Montelongo brought in another attorney to give an opinion because Petitioner was having problems understanding what was occurring.  (D.E. 1, Page 10).  Petitioner further maintains there is no proof, other than Montelongo's affidavit, that the third party attorney had properly translated in a way Petitioner could understand.  (D.E. 1, Page 10).  Petitioner's counsel averred he conducted all interactions with Petitioner in Spanish, a language in which counsel is fluent, and thoroughly discussed all facets of the case with Petitioner.  (D.E. 10-2, Page 59).  Petitioner's counsel further averred Petitioner "never said he did not understand

what was being discussed." (D.E. 10-2, Page 59).  Petitioner tries to clarify his position, stating "Montelongo did speak to me in [S]panish sometimes but I would tell him that I did not understand his [S]panish because he had a different dialect." (D.E. 1, Page 19). The state habeas court generally found "no evidence to indicate that trial counsel was ineffective" and "[a]pplicant was thoroughly admonished of his rights, and intelligently waived them before entering his guilty plea pursuant to a plea bargain agreement with the State." (D.E.10-2, Page 70).

The Fifth Circuit has held a defendant is informed of the consequences of his plea if he is informed of the maximum sentence. *Hobbs v. Blackburn*, 752 F.2d 1079, 1082 (5th Cir. 1985).  "'The Constitution does not require that, in order to understand the consequences of a plea of guilty, the accused must be informed by the trial court, or must otherwise know, whether or not sentences imposed for separate crimes will run consecutively or concurrently.'"  *Barbee v. Ruth,* 678 F.2d 634, 635 (5th Cir. 1982)(citing *Haynes v. Henderson*, 480 F.2d 550 (5th Cir. 1973)).  The possibility a sentence may run consecutively with a prior sentence is not a consequence which has to be explained to a defendant.  *Id.*  Additionally, while the Fifth Circuit has not directly addressed ineffective assistance in the context of a misunderstanding in translation, district courts have denied ineffective assistance claims based on a language barrier or failure to interpret when the record contradicts the claims of ineffectiveness.  *See Escuadra v. United States*, No. A-07-CR-013-LY 5, 2009 WL 3633900, at *3 (W.D. Tex. Oct. 29, 2009)(denying a motion to vacate sentence based upon petitioner's argument the

interpreters assisting his lawyer were incompetent and misinformed petitioner of the sentence under the plea agreement).

Here, Petitioner asserts that counsel was ineffective based on the fact he failed to translate important aspects of the case to Spanish, including the consecutive nature of the sentences. Petitioner's attorney was fluent in Spanish, conducted all interactions in Spanish, and discussed all the aspects of the case with Petitioner. The state court denied relief on this claim, finding Petitioner was thoroughly made aware of his rights and validly waived them before entering his plea. On the specific issue of whether the sentences were to be consecutive, established precedent states the possibility of a consecutive sentence is not a consequence which has to be explained to a defendant. Therefore, the assertion that Petitioner did not understand the meaning of the word consecutive is inadequate to support his ineffective assistance of counsel claim. The state court denied Petitioner relief on this claim and he has not shown this finding to be an unreasonable application of *Strickland*. The claims by Petitioner pertaining to translation issues did not affect the knowing and voluntary nature of his plea. Therefore, it is recommended summary judgment be entered for Respondent on this issue.

### 3.    Wrongful Advice to Plead Guilty

Petitioner next alleges his counsel wrongfully encouraged him to plead guilty to the seven felony murder charges and seven aggravated assault charges by advising him a trial would result in Petitioner receiving "99 years if he went to trial and might even get the death penalty." (D.E. 1, Page 9). Petitioner further states the meeting with the second attorney further convinced him he was facing the death penalty because "[a]ll inmates

know that two attorneys are appointed in death penalty cases." (D.E. 7, Page 10).  In his affidavit, Petitioner's counsel avers he "never told [his] client or advised [his] client that [he] would get the death penalty," and "[Petitioner's] range of incarceration punishment was always 5-99 years or life, for a 1st degree felony and 2-20, years for a 2nd degree felony." (D.E. 10-2, Page 59).  In Texas, the punishment for a first degree felony is five to 99 years imprisonment.  Tex. Penal Code § 12.32(a).  Petitioner pled guilty to seven first degree and seven second degree felony charges.  (D.E. 10-2, Page 25).

The advice of counsel as to the possible consequence of not accepting a plea bargain does not amount to ineffective assistance of counsel.  "A defense attorney should make informed predictions about the consequences of either pleading guilty or going to trial." *United States v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002).  The Fifth Circuit has held "[a] defense lawyer's stern warnings about the client's chances of success at trial, the potential for prison time, and the lawyer's potential withdrawal do not compromise voluntariness." *Id*.; *See also Uresti v. Lynaugh*, 821 F.2d 1099 (5th Cir. 1987)(finding plea voluntary where attorney warned client he would be lucky to get 99 years at trial and threatened to withdraw if client did not accept the 35 year plea offer).

Here, Petitioner was advised of the potential penalty for the charges brought against him.  His attorney warned him about the severity of the crime and the charges. There is some dispute over whether or not the attorney mentioned the death penalty; however, there is no proof in the record the death penalty was mentioned other than Petitioner's assertions and his assumption about the second attorney's consultation. Petitioner's conclusory allegation, without more, is insufficient to raise a constitutional

issue entitling him to habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *see also Brown v. Houston*, 337 F.3d 539, 541(5th Cir. 2003)("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.")  The state court denied Petitioner relief on this claim and Petitioner has failed to show this finding was an unreasonable application of *Strickland*.  The knowing and voluntary nature of Petitioner's plea was not affected by the actions of counsel.  Therefore, it is recommended summary judgment be entered for Respondent on this issue.

### 4.    Conflict of Interest

Petitioner alleges his state trial counsel had a conflict of interest because he represented Petitioner in both the state and federal cases.   (D.E. 1, Pages 14-15).  Petitioner alleges the conflict of interest was demonstrated by his counsel's advice to plead guilty to the federal charges, because Petitioner believes the plea prevented him from contesting the state charges because they involved identical facts as the federal charges. (D.E. 1, Pages 14-15).  Petitioner claims the consultation of the second attorney served as proof of the conflict and possibly created a second conflict of interest.  (D.E. 1, Page 15).  The state habeas court denied relief on this claim, although no explanation was provided.  (D.E. 10-2, Pages 69-71).  Additionally, Petitioner states his counsel and the prosecution had a strategy to obtain a conviction for "such a notorious newsworthy case" in order to receive financial gains and publicity.  (D.E. 18, Page 15).

In claims of ineffective assistance based on a conflict of interest, Petitioner must satisfy both parts of a two prong test: "(1) there was an 'actual conflict of interest' that

(2) 'adversely affected his lawyer's performance.'" *Ramirez v. Dretke*, 396 F.3d 646, 649 (5th Cir. 2005)(quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). "Multiple representation does not always create an impermissible conflict." *Bostick v. Quarterman*, 580 F.3d 303, 307 (5th Cir. 2009)(citing *United States v. Culverhouse*, 507 F.3d 888, 892 (5th Cir. 2007)). An actual conflict of interest exists if counsel is required to choose between advancing his client's interests in a fair trial or advancing other interests, including his own, to the detriment of his client's interest. *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). Adverse effect may be shown by evidence that some plausible defense strategy or tactic might have been pursued but was not because of the actual conflict of interest impairing counsel's performance. *Id*. Assuming the defendant establishes an actual conflict that adversely affected counsel's performance, prejudice is presumed without any further inquiry into the effect on the outcome of the trial. *Id*. at 781-82 (citation omitted).

Here, Petitioner has failed to show his counsel acted on behalf of any other interest at trial by identifying the fact that his counsel handled both the federal and state cases against Petitioner. Further, Petitioner has not shown how his counsel was required to make a choice between advancing Petitioner's interest in a fair trial or advancing other interests to Petitioner's detriment. There is no indication in the record his counsel was faced with having to make a choice contrary to Petitioner's interests. Nor does the record suggest Petitioner's interests and his counsel's interests diverged because counsel represented Petitioner in both the federal and state trial court. Further, even if Petitioner had established a conflict of interest, Petitioner has failed to show it had an adverse

impact or effect on his counsel's performance in defending him.   Petitioner's mere assertion of a conflict of interest does not support a claim of ineffective assistance of counsel.   Petitioner's allegation that his counsel was engaged in a strategy with the prosecutor to collude for "financial and public image gains" is similarly conclusory and unsupported by evidence.  (D.E. 18, Page 15).   Petitioner's conclusory allegation, without more, is insufficient to raise a constitutional issue entitling him to habeas relief.  *Koch*, 907 F.2d at 530; *see also Brown*, 337 F.3d at 541 ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.")  The state court denied relief on this claim and Petitioner has not shown this finding to be unreasonable. The actions of counsel forming the basis of this conflict of interest claim did not affect the knowing and voluntary nature of Petitioner's plea.   Therefore, it is recommended summary judgment be entered for Respondent on this issue.

### C.     Plea Was Not Knowing or Intelligent

Petitioner next alleges that because of his counsel's alleged inaccurate legal advice, he was coerced to plead guilty.  (D.E. 1, Page 9).   Montelongo maintains his advice to Petitioner was based upon his genuine interpretation of the facts and law surrounding the case.  (D.E. 10-2, Pages 59-60). The state habeas court found "no evidence to indicate that trial counsel was ineffective, nor that [Petitioner] pled guilty involuntarily." (D.E. 10-2, Page 70).   The state court record further indicates Petitioner was fully informed about the consequences of his plea.  (D.E. 10-2, Pages 25-26).

A federal court will uphold a guilty plea challenged in a habeas corpus proceeding
if the plea was knowing, voluntary and intelligent. *Hobbs*, 752 F.2d at 1081.

> A plea of guilty entered by one fully aware of the direct consequences,
> including the actual value of any commitments made to him by the court,
> prosecutor, or his own counsel, must stand unless induced by threats (or
> promises to discontinue harassment), misrepresentation (including
> unfulfilled or unfulfillable promises), or perhaps by promises that are by
> their nature improper as having no proper relationship to the prosecutor's
> business (e.g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970). "If a defendant understands the
charges against him, understands the consequences of a guilty plea, and voluntarily
chooses to plead guilty, without being coerced to do so, the guilty plea and any
concomitant agreement will be upheld on federal review." *Devill v. Whitley*, 21 F.3d
654, 657 (5th Cir. 1994)(quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).
The Supreme Court has specifically held a guilty plea is a voluntary and intelligent
choice among alternatives and not compelled when it is entered to avoid a longer
sentence. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

The Constitution requires a defendant be advised and understand the consequences
of his guilty plea, meaning only that the "defendant must know the maximum prison term
and fine for the offense charged." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir.
1990). The requirement that a guilty plea be intelligently made "is not a requirement that
all advice offered by the [Petitioner's] lawyer withstand retrospective examination in a
post-conviction hearing." *McMann v. Richardson*, 397 U.S. 759, 770 (1970). "[T]he
critical issue is whether the defendant understood the nature and substance of the charges

against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitney*, 933 F.2d 325, 329 (5th Cir. 1991), *cert. denied*, 503 U.S. 988 (1992).

In this case, Petitioner's unsupported and unspecific allegations of prejudice alone are insufficient. Petitioner has offered no evidence or reasoning as to why he would have been prejudiced in his plea by his counsel's advice. Furthermore, since the state habeas court has ruled on the matter, unless Petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. Petitioner has not submitted any evidence to support his claim of coercion nor shown he was inadequately informed of the nature of the charges against him prior to his guilty plea. The state court denied relief on this claim and Petitioner has not overcome the presumption of correctness. Therefore, it is recommended summary judgment be entered for Respondent on this issue.

### D.      The Vienna Convention

Petitioner, a citizen of Mexico, alleges he was denied his right to consult with and receive advice from the Mexican Consulate under the Vienna Convention on Consular Relations. (D.E. 1, Page 13). Petitioner asserts he requested to have the Mexican Consulate contacted but no one ever contacted the Consulate. (D.E. 10-2, Page 40). Petitioner asserts had the Mexican Consulate been contacted, the charges would have been dismissed with the help of the Consulate. (D.E. 10-2, Page 40). The state habeas court found "no evidence that the Mexican Consulate could have obtained dismissal of the charges." (D.E. 10-2, Page 70).

The Vienna Convention on Consular Relations "creates no judicially enforceable individual rights."[7] *Cardenas v. Stephens*, 820 F.3d 197, 199 (5th Cir. 2016)(citing *Cardenas v Dretke,* 405 F.3d 244, 252-253 (5th Cir. 2005)). "The fact that the Court has not found an individually enforceable right [under the Vienna Convention] means that, under § 2254(d)(1), we cannot grant relief, because such a right is not part of clearly established federal law as determined by the Supreme Court." *Id*. at 203. "Even if [Petitioner's] rights [under the Vienna Convention] were violated in some judicially redressable fashion, he was not prejudiced." *Id*. at 199-200.

Therefore, Petitioner cannot enforce any rights under the Vienna Convention and no relief can be granted under § 2254(d)(1). As found by the state habeas court, even if Petitioner's rights under the Convention were violated in a judicially redressable fashion, he cannot show prejudice in this case because there was no evidence the Mexican Consulate could have obtained a dismissal of his charges. The fact Petitioner did not consult with the Mexican consulate did not affect the knowing and voluntary nature of his plea. Therefore, it is recommended summary judgment be entered for Respondent on this issue.

### E.      Refusal to Turn Over Case File

Petitioner alleges his counsel has refused and continues to deny him access to his state case file. (D.E. 1, Pages 15-16). Petitioner's counsel indicates the contents of the case file are unavailable to Petitioner under state law, which precludes making copies of

---

[7] *See Medellin v. Texas*, 552 U.S. 491, 522-523 (2008)(the Vienna Convention creates binding international-law obligations on the U.S., but it places no obligation upon the states individually).

discovery materials for a defendant.  (D.E. 10-2, Pages 60-61).  The state habeas court determined the Texas Code of Criminal Procedure prohibited Petitioner's counsel from providing Petitioner with copies of the discovery in his state case.  (D.E. 10-2, Page 70).

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  The Texas Code of Criminal Procedure provides:

> The attorney representing the defendant, or an investigator, expert, consulting legal counsel, or agent for the attorney representing the defendant, may allow a defendant, witness, or prospective witness to view the information provided under this article, but may not allow that person to have copies of the information provided, other than a copy of the witness's own statement.

Tex. Crim. Proc. Code § art. 39.14(f).

Under federal procedure, Petitioner is not entitled to discovery of his state court case file.  Further, as found by the state habeas court, Petitioner does not have a right to his state case file under Texas law. Therefore, it is recommended summary judgment be entered for Respondent on this issue.

### F.    Request for an Evidentiary Hearing

Petitioner has requested an evidentiary hearing on the merits of this petition.  (D.E. 1, Page 7).  "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C.A. § 2254(e)(1). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id*.  If an applicant has failed to develop the factual basis of a

claim in state court proceedings, the court shall not hold an evidentiary hearing except under certain circumstances. 28 U.S.C. § 2254(e)(2).  A court shall hold an evidentiary hearing when the applicant shows:

> (A) the claim either relies on
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)-(B).  "State habeas factfindings are presumed correct only when there has been a full and fair hearing."  *Perillo*, 79 F.3d at 445 (citations omitted). A full and fair hearing does not have to be a live hearing and a paper hearing can be afforded the presumption of correctness.  *Armstead v. Scott*, 37 F.3d 202, 207 (5th Cir. 1994).  It is necessary to examine whether a paper hearing is appropriate to resolve the factual dispute underlying the petitioner's claim in each case.  *May v. Collins*, 955 F.2d 299, 312 (5th Cir. 1992).  In order to find an abuse of discretion which would entitle a petitioner to discovery and an evidentiary hearing, a court would have to find that the state did not provide a full and fair hearing and must be convinced that if proven, petitioner's allegations would entitle him to relief.  *Clark*, 202 F.3d at 766.

Here, the state habeas court, after first presiding over Petitioner's criminal trial and after considering the pleadings and affidavits before it, provided Petitioner with a full and

fair hearing. (D.E. 10-2, Pages 69-71). Accordingly, the state habeas proceeding is afforded the presumption of correctness. Petitioner has not made any showing in order to overcome this presumption. Therefore, it is respectfully recommended Petitioner's request for an evidentiary hearing be **DENIED**.

## V.    CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended this Court nonetheless address whether he would be entitled to a certificate of appealability ("COA"). A District Court ruling on a petitioner's relief may rule *sua sponte* on a COA because it "is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court." *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(per curiam). "Further briefing and argument on the very issues the court has just rule on would be repetitious." *Id*.

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). As to claims the Court rejects solely on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As to claims the

Court rejects solely on procedural grounds, the Petitioner must show both "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (emphasis added)

In Petitioner's case, reasonable jurists could not debate the dismissal or denial of the Petitioner's §2254 petition on substantive or procedural grounds, nor find the issues are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327. Accordingly, it is respectfully recommended the Court not issue a certificate of appealability.

## VI.    RECOMMENDATION

For the reasons stated above, it is respectfully recommended Respondent's Motion for Summary Judgment (D.E. 13) be **GRANTED,** Petitioner's request for an evidentiary hearing be **DENIED**, and Petitioner's application for habeas corpus relief be **DISMISSED**.  It is further recommended a Certificate of Appealability be **DENIED**.

ORDERED this 12th day of September, 2016.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).